**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| D.B., a Minor | ) | CASE NO. |
| 6179 Ambleside Drive | ) | |
| Columbus, Ohio 43229, | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| POLARIS RESTAURANT SERVICES, LLC | ) | |
| c/o Robert Pappas | ) | **JURY DEMAND ENDORSED** |
| 9999 Brewster Lane, Suite 101 | ) | **HEREIN** |
| Powell, Ohio 43065, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, a minor hereinafter referred to as D.B., by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

**PARTIES**

1. D.B. is a resident of the city of Columbus, Franklin County, Ohio.

2. At all times herein, D.B. was acting in the course and scope of her employment.

3. Polaris Restaurant Services, LLC d/b/a Burger King ("Burger King") is a domestic limited liability company that does business at 1360 Gemini Place, Columbus, Ohio 43240.

4. Burger King is and, at all times hereinafter mentioned, was an employer within the meaning of R.C. § 4112.01 *et seq.*

5. Burger King is and, at all times hereinafter mentioned, was an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").

6. Burger King is and, at all times hereinafter mentioned, was an employer within the meaning of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA").

## JURISDICTION & VENUE

7. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that D.B. is alleging a Federal Law Claim under Title VII and ADA.

8. All material events alleged in this Complaint occurred in Delaware County, Ohio.

9. This Court has supplemental jurisdiction over D.B.'s state law claims pursuant to 28 U.S.C. § 1367 as D.B.'s state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

11. Within 300 days of the conduct alleged below, D.B. filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2019-03024 against Burger King ("D.B. EEOC Charge").

12. On or about January 7, 2020, the EEOC issued and mailed a Notice of Right to Sue letter to D.B. regarding the Charges of Discrimination brought by D.B. against Burger King in the D.B. EEOC Charge.

13. D.B. received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

14. D.B. has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

15. D.B. has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

16. D.B. is a former employee of Burger King.

17. On or about March 28, 2019, D.B. began working for Burger King.

2

18. At all times herein, D.B. worked at the Burger King location at 1360 Gemini Place, Columbus, Delaware County, Ohio 43240 ("Polaris Location").

19. During the relevant period, Burger King employed D.B. as a front team member.

20. D.B. is 17 years old.

21. D.B. is female.

22. During the relevant period, D.B. was the only female front team member at the Polaris Location.

23. Because of D.B.'s gender, she is a member of a protected class.

24. At all times herein, Keisha (Last Name Unknown) was general manager at the Polaris Location.

25. Keisha LNU did not participate in the decision to hire D.B.

26. In or about March 2019, Keisha LNU asked Burger King's hiring manager, Vicky (Last Name Unknown), not to hire any female employees for the Polaris Location ("Sexist Request").

27. In or about March 2019, Keisha LNU told D.B. about the Sexist Request.

28. Keisha LNU told D.B. about the Sexist Request in an effort to pressure D.B. to resign.

29. During the relevant period, Keisha LNU treated D.B. unfavorably compared to her male coworkers.

30. During the relevant period, Keisha LNU praised male employees for their work.

31. During the relevant period, Keisha LNU did not praise D.B. for the same or similar work for which she praised male employees.

32. During the relevant period, Keisha LNU frequently shouted at D.B. for perceived performance issues, such as working too slowly.

33. During the relevant period, Keisha LNU did not shout at male employees for the same or similar work for which she shouted at D.B.

34. During the relevant period, Burger King had a program of customer satisfaction ratings in which customers could give front team members "smiley face" ratings for good service.

35. In or about April 2019, Burger King gave one of D.B.'s male coworkers, Larry (Last Name Unknown), a Wal-Mart gift card for receiving a smiley face rating from a customer.

36. In or about April 2019, D.B. received two smiley face ratings in one day.

37. When D.B. received two smiley face ratings in one day, Burger King did not praise or reward D.B.

38. When D.B. received two smiley face ratings in one day, the only comment Keisha LNU made to D.B. about the accomplishment was that the customers had misspelled D.B.'s name.

39. During the relevant period, Keisha LNU talked pleasantly with male employees and called them names like "baby" and "hon."

40. During the relevant period, Keisha LNU was hostile toward D.B. and called her pejorative names like "mental patient" and "fatass."

41. Herein, Paragraphs 27 through 40 are collectively called the "Sexist Behavior."

42. Keisha LNU engaged in the Sexist Behavior because of D.B.'s gender.

43. D.B. has Type 1 diabetes, anxiety, depression, and post-traumatic stress disorder ("D.B.'s Medical Conditions").

44. At all times herein, Burger King knew about D.B.'s Medical Conditions.

45. At all times herein, Burger King knew about D.B.'s diabetes.

46. Because of D.B.'s Medical Conditions, D.B. is and, at all times herein, was disabled within the meaning of ADA.

47. Because of D.B.'s Medical Conditions, D.B. is and, at all times herein, was disabled within the meaning of R.C. § 4112.01 *et seq.*

48. During the relevant period, Burger King perceived D.B. as disabled.

4

49. Because of D.B.'s diabetes, D.B. regularly has to check her blood sugar level.

50. Because of D.B.'s diabetes, D.B. regularly has to inject herself with insulin shots.

51. Because of D.B.'s diabetes, D.B. regularly has to eat snacks to regulate her blood sugar.

52. On or about March 28, 2019, D.B. informed Keisha LNU that she needed to take regular breaks to manage her diabetes ("Request for Accommodation").

53. D.B.'s Request for Accommodation was reasonable.

54. D.B.'s Request for Accommodation did not impose an undue burden on Burger King.

55. Keisha LNU often shouted at D.B. for taking breaks to manage her diabetes.

56. In or about May 2019, Keisha LNU learned that D.B. took prescription medications for her depression.

57. In or about May 2019, Keisha LNU asked D.B. about her depression in front of D.B.'s coworkers.

58. In or about May 2019, Keisha LNU repeatedly mocked D.B. for her depression.

59. In or about May 2019, Keisha LNU repeatedly called D.B. "crazy" and "a mental patient" in front of other employees.

60. Herein, Paragraphs 55 through 59 are collectively called the "Disability Discrimination."

61. Keisha LNU engaged in the Disability Discrimination because of D.B.'s disabilities.

62. Keisha LNU engaged in the Disability Discrimination because of D.B.'s perceived disabilities.

63. On or about June 1, 2019, Keisha LNU removed D.B. from the schedule at the Polaris Location.

64. On or about June 8, 2019, D.B. reported the Sexist Behavior to Vicky LNU.

65. On or about June 8, 2019, D.B. reported the Disability Discrimination to Vicky LNU.

66. On or about June 8, 2019, D.B. asked Vicky LNU to transfer her to a different Burger King location where Keisha LNU would not be her manager.

67. Burger King has a policy against discrimination ("Discrimination Policy").

68. Burger King's Discrimination Policy requires employees to report what they reasonably believe is a violation of the Discrimination Policy.

69. The Sexist Behavior violates the Discrimination Policy.

70. The Disability Discrimination violates the Discrimination Policy.

71. Burger King has a policy to investigate reports of unsafe conditions.

72. Burger King has a policy to investigate reports of violations of its Discrimination Policy.

73. An investigation should include interviewing the complainant.

74. An investigation should include interviewing the subject of the complaint.

75. An investigation should include interviewing the subject of the reported discrimination.

76. An investigation should include interviewing witnesses to the reported discrimination.

77. An investigation should include getting a written statement from the complainant.

78. An investigation should include getting a written statement from the subject of the complaint.

79. An investigation should include getting a written statement from the subject of the reported discrimination.

80. In response to D.B.'s report of discrimination, Defendant did not interview D.B.

81. In response to D.B.'s report of discrimination, Defendant did not interview Keisha LNU.

82. In response to D.B.'s report of discrimination, Defendant did not interview witnesses.

83. In response to D.B.'s report of discrimination, Defendant did not get a written statement from D.B.

84. In response to D.B.'s report of discrimination, Defendant did not get a written statement from Keisha LNU.

85. In response to D.B.'s report of discrimination, Defendant did not get a written statement from witnesses.

86. Defendant did not investigate D.B.'s report of discrimination.

87. Defendant did not give Keisha LNU a verbal warning because of D.B.'s report of discrimination.

88. Defendant did not give Keisha LNU a written warning because of D.B.'s report of discrimination.

89. Defendant did not give Keisha LNU a final warning because of D.B.'s report of discrimination.

90. Defendant did not give Keisha LNU a suspension because of D.B.'s report of discrimination.

91. Defendant did not terminate Keisha LNU because of D.B.'s report of discrimination.

92. Defendant did not grant D.B.'s request for a transfer.

93. After D.B. complained to Vicky LNU about discrimination, Burger King did not permit D.B. to return to work.

94. On or about June 1, 2019, Burger King terminated D.B.'s employment.

95. On or about June 1, 2019, Burger King terminated D.B.'s employment because of her gender.

96. On or about June 1, 2019, Burger King terminated D.B.'s employment because of her disabilities.

97. On or about June 1, 2019, Burger King terminated D.B.'s employment because of her perceived disabilities.

98. As a direct and proximate result of Defendant's conduct, D.B. suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT I: GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

99. D.B. restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

100. D.B. is a member of a statutorily protected class based on her gender under Title VII.

101. Defendant treated D.B. differently than other similarly situated employees based on her gender.

102. Defendant discriminated against D.B. on the basis of her gender throughout her employment with the company.

103. Defendant terminated D.B.'s employment based on her gender.

104. Defendant constructively discharged D.B.'s employment based on her gender.

105. Defendant's discrimination against D.B. based on her gender violates Title VII.

106. As a direct and proximate result of Defendant's conduct, D.B. suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT II: GENDER DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

107. D.B. restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

108. D.B. is a member of a statutorily protected class based on her gender under R.C. § 4112.02.

109. Defendant treated D.B. differently than other similarly situated employees based on her gender.

110. Defendant discriminated against D.B. on the basis of her gender throughout her employment with the company.

111. Defendant terminated D.B.'s employment based on her gender.

112. Defendant constructively discharged D.B.'s employment based on her gender.

113. Defendant's discrimination against D.B. based on her gender violates R.C. § 4112.01 *et seq.*

114. As a direct and proximate result of Defendant's conduct, D.B. suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

<u>**COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF ADA**</u>

115. D.B. restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

116. Defendant treated D.B. differently than other similarly-situated employees based on her disabling condition.

117. Defendant treated D.B. differently than other similarly-situated employees based on her perceived disabling condition.

118. Defendant terminated D.B.'s employment based on her disability.

119. Defendant constructively discharged D.B.'s employment based on her disability.

120. Defendant terminated D.B.'s employment based on her perceived disability.

121. Defendant constructively discharged D.B.'s employment based on her disability.

122. Defendant violated ADA when it discharged D.B. based on her disability.

123. Defendant violated ADA when it discharged D.B. based on her perceived disability.

124. As a direct and proximate result of Defendant's conduct, D.B. suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

<u>**COUNT IV: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***</u>

125. D.B. restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

126. Defendant treated D.B. differently than other similarly-situated employees based on her disabling condition.

127. Defendant treated D.B. differently than other similarly-situated employees based on her perceived disabling condition.

128. Defendant terminated D.B.'s employment based on her disability.

129. Defendant constructively discharged D.B.'s employment based on her disability.

130. Defendant terminated D.B.'s employment based on her perceived disability.

131. Defendant constructively discharged D.B.'s employment based on her disability.

132. Defendant violated R.C. § 4112.02 when it discharged D.B. based on her disability.

133. Defendant violated R.C. § 4112.02 when it discharged D.B. based on her perceived disability.

134. As a direct and proximate result of Defendant's conduct, D.B. suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff D.B. respectfully requests that this Honorable Court grant the following relief:

(a) Issue an order requiring Defendant retroactively to restore Plaintiff to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate D.B. for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for D.B.'s claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,


*/s/ Paul Filippelli*_____
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**THE SPITZ LAW FIRM, LLC**
470 Olde Worthington Road, Suite 200
Westerville, Ohio 43082
Phone: (614) 410-6720
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: paul.filippelli@spitzlawfirm.com
*Attorneys for Plaintiff D.B.*


## JURY DEMAND

Plaintiff D.B. demands a trial by jury by the maximum number of jurors permitted.


*/s/ Paul Filippelli*_____
Trisha Breedlove (0095852)
Paul Filippelli (0097085)

11